The court will proceed to the second case of the day, Dunn v. Menard. Mr. Starr. Good morning, Your Honors. Good morning, Counsel. If it may please the court, my name is Sean Starr, and I represent the petitioner, Larry Dunn, in this appeal. This appeal before the court is a personal injury case that we believe was prematurely decided at the summary judgment stage. The petitioner, Mr. Dunn, like countless others do every day, encountered self-service inventory at a Menard's that he attempted to navigate. Mr. Dunn did just that. It's undisputed in the record. He was able to successfully retrieve the bundles of insulation that he had purchased without physically touching or disturbing any of the other inventory in the area. Mr. Dunn did admit in his deposition that in the process of retrieving the insulation, he noticed that there was another stack of insulation, he said it was 16 feet tall, that was leaning. And Mr. Dunn did what many people would have done in the same situation. He examined the area. He spent several minutes checking it out to make sure that it was safe enough that he could retrieve the other insulation that was in front of this leaning stack without disturbing it. Mr. Dunn was a small projects manager at Columbia College Chicago, so he was particularly adept at being around building materials and building site safety. So Mr. Dunn told his son, Eric, who was with him that day, to be conscious of the leaning stack of insulation and steer clear of it. And he and his son did exactly that. They consciously avoided it. The record is clear that neither of them touched or disturbed the leaning stack of insulation. But somehow that stack did fall and injured Mr. Dunn. Mr. Dunn brought a suit in state court and the case was removed to the district court under diversity jurisdiction. The district court judge found that on summary judgment, Mr. Dunn, since he saw this leaning stack, there wasn't a question of fact and the leaning stack was open and obvious. A reasonable person in Mr. Dunn's shoes would have recognized that this danger existed. This court has proper jurisdiction under 28 U.S.C. 1291. And we're here today to tell this court that we believe that there is most certainly an issue of fact that does exist about whether or not the stack was open and obvious. And we've asked this court to let a jury properly determine whether or not Mr. Dunn's actions were reasonable. To support that position, we have three arguments that we'd like to present to the court. The first argument and the most important argument is that the open and obvious doctrine does not apply. Because Mr. Dunn never apprehended the inherent danger of the leaning stack of insulation. The second argument is that even if this court found that the stack was open and obvious, Menard still owed Mr. Dunn a duty to provide a safe premises. And finally, the third argument is that the district court improperly struck some portions of Mr. Dunn's affidavit that he submitted on summary judgment. As to the first argument regarding open and obvious, essentially the court determined that since Mr. Dunn encountered the stack and he saw the stack, there was no reason to determine whether or not the stack was inherently dangerous. We believe that this collapses the element of obvious into the element of open. The court did this because the court said that there was no dispute about the physical nature or condition of the leaning stack, thus making this a question of law. In Illinois, the cases where there's no dispute about the physical condition generally fall into very limited categories. Quite often, the most common example is somebody diving into a body of water. Other things like moving freight trains have been found to be types of physical conditions where there's no dispute about the nature. And in all those cases, there's also the element that each of the plaintiffs physically encountered the thing that caused them harm. Mr. Dunn made a conscious effort not to encounter the leaning stack that eventually fell on him. He was approximately 10 feet away from the stack when it tipped over. He was with his son. They were trying to buy insulation to insulate their houses. It was January. He did everything in his power to steer clear of the stack after he determined that it was safe, provided he didn't bump into it or tip it over. The physical nature of the stack, we believe, is still in dispute. And the reasons we believe it's still in dispute are because, to begin with, Mr. Dunn's interpretation of the stack was that it was safe. He interpreted it to be safe to proceed around the stack. He didn't think there was a danger of it tipping over absent bumping into it. His son, who was also there, also testified that he didn't think it was imminently going to collapse. He thought that if they bumped into it or touched it, it could have collapsed, but they both made an effort to not do so, and the record reflects that neither of them did. And finally, Mr. Krause, Kyle Krause, who was the manager at the store, he wasn't there when it happened. The only two people who saw the stack were Mr. Dunn and his son. But Mr. Krause had previously walked through the warehouse on three occasions to look for safety checks, and he said, when he saw a photograph of another leaning stack that we presented that was there on that day, he said, if that's the way the stack was leaning, then Menards considers that safe. And Mr. Dunn looked at the leaning stack, and though he said it was not exactly like the one that fell on him, he said it was similar. The court, with very little evidence of what the stack actually looked like, found that the leaning stack was undisputably dangerous, but this is something that's been historically the purview of a jury. Under the restatement, a condition is obvious in Illinois where a plaintiff not only has knowledge of the existence of the condition, like Mr. Dunn did, but also an appreciation of the specific danger it involves. Mr. Krause himself testified that the concept of unsafe is a subjective understanding. It follows that a jury would think the same. And that's what Illinois case law overwhelmingly tells us. The Rivas case, which the appellee and the district court cited, tells us that, quote, where a reasonable person can draw divergent inferences from undisputed facts, summary judgment should be denied. The record contains numerous undisputed facts that demonstrate that Mr. Dunn did not recognize the danger. Mr. Dunn was honest in his deposition. He said, you know, I saw that it was leaning, and I saw that it wasn't stacked straight, and I saw that it was unstable. He admitted that he saw that, but he also talked about how he examined it, and he determined, based on his previous experience and based on the way the stack was leaning, that he didn't think it was going to fall if he didn't touch it. Instead, the court found that the undisputed evidence allowed for only one conclusion. And to get there, the court cites to Bellomini, an Illinois state case. But Bellomini, which relied on a variety of other Illinois state cases, tells us that the determination of whether a condition is open and obvious has been consistently held to be a question of fact. And the Bellomini case emphasizes that it's a two-part analysis. There's a recognition of the condition, but there's also an apprehension of what danger the condition offers. And Mr. Dunn did not apprehend the scope of danger. Like other Illinois cases, Ward, Deibert, Puglia, and other precedent, they all tell us that whether it's obvious a condition is dangerous, or whether additional precautions are necessary to require to satisfy a defendant's duty, is something that is generally left to a trier of fact. The court, we think, wrongly took this determination away from the jury. And we ask that this court return that to the jury. Additionally, it's our contention that even if this court finds that it was open and obvious, Menard still had a duty to protect against the harm that led to Mr. Dunn's injuries. If you find open and obvious, it doesn't do away with the duty analysis. It just makes the first two elements of it less significant. So it makes it less significant whether it was foreseeable or not for Menard to know that this injury would occur. But the court, the district court, we believe, incorrectly focuses on Dunn and his actions, instead of focusing on, in terms of duty, and focusing on the defendant's actions. Menard's are the one that put this stack in the warehouse. What is the plaintiff's theory about why the stack fell? Well, our theory is that it doesn't necessarily matter how it fell, other than the fact he didn't- I'm asking what your theory is about why it fell. Sure. The only thing that I can think of is that there was two other employees at Menard's, and Menard's testified to this, who were in the Bay Area next to it, who Mr. Dunn didn't see, and they didn't see Mr. Dunn, but they told the manager on duty that they heard the stack collapse. So maybe there was some sort of work being done that led to bumping into where the stack was located. Mr. Dunn didn't touch it, so he doesn't know how it fell. I'm lost. If they were in the next bay, they didn't touch the stack. Well, the stack is- To get a leaning stack to fall over, force has to be applied. Agreed. Right? Since gravity is constant. Was there any wind in the warehouse? Not that anyone testified to. Obviously, no earthquake that day. No, sir. So somebody must have touched it. Somebody must have touched it. And Mr. Dunn- And if it's not the Dunn's, and if there was no Menard's employee in the same bay, who? We don't know what the Menard's employees in the bay over were doing, because we requested their names, and Menard's was unable to produce them. They may have been using a forklift. They may have been moving heavy machinery. Do you think maybe the floor was vibrating? It's possible, or they could have bumped into the side of the bay that they shared. We don't know. Was it touching the stack? There's no way to know because the stack fell, and nobody knew exactly how it was stacked. I see that my time is up in terms of I'd like to reserve five minutes, if that's okay. All right. Thank you. Thank you, Mr. Starr. Mr. Janssen? Good morning, Your Honors, employees of the court, counsel, Gary Janssen for Appley and Menard, Inc. What I'd like to do is to go briefly through four major subject matters, the first being whether we are, in fact, dealing with something that is an issue of law here. Secondly, the district court's finding that this was an open and obvious nature condition as a matter of law. Third, even assuming it was an open and obvious condition, did Menard owe a duty despite that condition? And fourth, plaintiff's contention regarding the evidentiary ruling of the district court. With regard to the first issue regarding the question of law, we start from the premise, of course, duty is a question of law, but beyond that, the courts have ruled that where there's no dispute regarding the whether or not that condition is open and obvious is a matter of law, and that was confirmed by the United States District Court for the Northern District in Gooderman v. Target, a 2017 case which cited to the Bruns, Illinois Supreme Court case, for the same proposition that open and obvious is a matter of law where there's no dispute regarding the physical nature. In this case, there's no dispute regarding the physical nature of the stack of insulation. There are only two witnesses to observe the stack of the insulation, Plaintiff and his son. Both used the exact same terms in describing the stack of insulation. They said it was leaning, they said it was uneven, and they said it was unstable. So therefore, the district court properly found that the parties do not dispute in this case that there was any issue with regard to the physical nature of the condition. So having established that this is a matter of law, we then turn to the district court's decision that it was open and obvious as a matter of law, and that, of course, it determined under Illinois law by an objective standard, and the district court properly ruled that a reasonable person in Mr. Dunn's position with his knowledge and observations would have found that this was an open and obvious condition because it was leaning, because it was uneven, and because it was unstable. Now the district court's decision, and of course, from a reasonable person's standpoint, the nature of objects that are leaning and uneven and unstable is that they tend to fall. And with respect to the district court's decisions, the reasonable person standard, the district court relied upon the Rivas case, the Camp case, the Wilfong case. And in Rivas, this was a situation where there was drywall. The plaintiff went into a home under construction, touched the drywall. The drywall fell back on the plaintiff, injured him, and the court said that it was open and obvious that a stack of drywall could have fallen on the plaintiff. It was open and obvious as a matter of law. In the Camp case, this court decided and found that there was an unsecured pallet on a tractor trailer and that the driver knew that there was a possibility that that load had shifted during transport. When the driver opened the trailer door, it should have been open and obvious to the plaintiff that that load, that pallet, may have shifted. And in the Wilfong case was a case where the plaintiff was crossing a construction site over a number of different ruts on the construction site, and the court found that the rut that the plaintiff stepped in and the condition as a whole should have been open and obvious because the plaintiff was aware that he was crossing ruts that may collapse and may depress. And I think it's important to note that both in the Rivas case and in the Wilfong case, the court did not focus on the single condition at issue. For instance, in the Wilfong case, the court said the issue was not whether that particular rut the plaintiff stepped in was an open and obvious danger, but the fact that he was crossing a construction site with a number of ruts, some of which may depress and cause injury. And the court in Rivas took the same position, that it wasn't simply the drywall in the house. It was the open and obvious danger of walking through a house under construction. Now, the district court's decision is buttressed by, of course, Mr. Dunn's own subjective knowledge of the condition. And in that regard, Dunn admits that it was a leaning, uneven, unstable stack of insulation, and the court, again, correctly pointed out that testimony and also the testimony that both plaintiff and his son not only noted those conditions but said those conditions were obvious. And in addition to that, the district court relied upon plaintiff's testimony that he warned his son on more than one occasion to be careful of the leaning stack. Now, a plaintiff argues that although Dunn observed the leaning stack, he didn't apprehend the danger of it. Well, the district court said that that was belied by Mr. Dunn's actions. He, in fact, warned his son, stay away from the leaning stack. He said, we looked at it for five minutes trying to figure out if we could obtain stacks of insulation off the ground by staying out of the way of the leaning stack in case it should fall. So I think it's clear in the evidence that Mr. Dunn did, in fact, apprehend the danger. The next issue is whether or not Menard owed a duty despite the open and obvious condition. And here the district court correctly looked at the Illinois four-factor analysis, which is the reasonableness, the foreseeability of the injury,  and the consequences of placing that burden on the defendant. And with regard to the first two issues, the reasonable foreseeability and the likelihood, the Illinois cases are clear that where a condition is open and obvious, it decreases the reasonable foreseeability and decreases the likelihood of the injury. And with regard to the third and the fourth factors, the magnitude of the burden and the consequences of imposing that burden, the district court correctly found that in this situation it would be an onerous burden on Menard and would require expending significant resources for Menard to have employees stationed constantly in a warehouse to watch over or oversee their customers. And that finding is entirely consistent with the Kleiber versus Farm and Fleet Illinois case where the court came to the same decision regarding the magnitude of the burden, and in Kleiber was a situation where the customer in an outdoor warehouse similar to Menard's stepped on a pallet and was injured, and the court said that the magnitude of that burden would be onerous, would be a great burden to require Farm and Fleet to have employees stationed outside to oversee the customer's interactions with the merchandise. And the district court's decision on that, again, is consistent in Guterman versus Target, the Northern District case that I mentioned, the 2017 case. The court found that it would be an onerous, great burden on Target to require them to constantly monitor customers' interactions with merchandise within the store, and in fact went on to say that the consequences would be so broad that if in fact Target was unable to adequately police customers and their interactions with merchandise, it may affect the entire way that they sell merchandise. And I think that recognition by the district court in Guterman and the district court here in the Dunn case is in fact that there are a large number of self-service warehouse-type retail operations that depend on buying merchandise in bulk, storing it in bulk, and in those situations it's very common for customers to come upon and maybe disarray a lodge or dislodge something in a stack, and if we required that they not stack merchandise in that manner and we didn't allow self-service customers, that that would have a significant impact on how these retailers do business. And the Camp case I mentioned earlier, this Seventh Circuit decision regarding the unsecured pallet, the court also in that case found that it would be an unreasonable burden to require the defendant to oversee the operations of its employees or to monitor its employees to make sure that they don't undertake and engage and encounter a risk that should be known and obvious. Lastly, with respect to the district court's evidentiary ruling, that of course needs to be reviewed on an abuse of discretion standard and Judge Ellis correctly found that the affidavit that plaintiff submitted did in fact certain statements within it contradicted the admissions in his deposition regarding the obviousness of the stack of insulation and that of course was a ruling that barred some of the statements within the affidavit and that district court ruling was correct because what plaintiff tried to do was basically obviate some of the admissions that he had made in his deposition regarding his observations of the stack. And more importantly, it's not material in any event as to the changes that plaintiff made in his deposition testimony because ultimately the issue of open and obvious is an objective standard and the fact that plaintiff's concerns one way or the other when he changed his affidavit as to what he thought or what he thought on different occasions is not material to the issue of whether it was an objectively open and obvious condition. Thank you, Your Honors. James Janssen, Mr. Starr. Thank you, Your Honors. I just have a few points to make here. To begin with, Mr. Janssen said that things that are stacked tend to fall. Mr. Krause, the manager at Menards, testified that absent a pull or a push, he did not think a leaning stack of this installation would fall. And in an attempt to answer a previous question about how it happened, it's my understanding that the bays at Menards are separated by the inventory itself. So I don't know how it happened, but I believe that the actual stacks of installation separated the area in the warehouse from one area to the other. In regards to this being an issue of law, counsel cited the Gutterman case and the Bruns case. In the Gutterman case, it was an 11-year-old who was riding a skateboard in Target. In the Bruns case, it was an 80-year-old woman who tripped over a tree root who she testified she saw on a regular basis and thought it was an accident waiting to happen. The difference here is that Mr. Dunn saw the leaning stack and his opinion and his interpretation was it wasn't going to fall if he didn't bump into it. He was 10 feet away from it when it fell. In regards to the open and obvious cases that were cited, the Rivas case, the Kamp case, and the Wilfong case, in each of those cases there is an element of physical encounter, the volition on the part of the plaintiff is the physical encounter. The court in Rivas in particular said that he should have apprehended the danger of the leaning stack of drywall if moved. That's the language of the court, and that's cited in our reply brief. That's the finding of the court, that if moved, he should have expected that stack could have fallen and hurt the plaintiff. In the Kamp case, the plaintiff in that case opened a door that she knew there was danger behind, and the danger fell on her, a pallet fell on her. And in the Wilfong case, the individual stepped into a rut, consciously stepped into a rut. Here, Mr. Dunn consciously avoided the leaning stack. How close was the merchandise that Mr. Dunn was going to pick up to the stack? It was several feet in front of it. He was able to get in between it to examine the leaning stack. There's testimony to that. So he had to pass this? He had to pass the stack that fell? The stack that fell was behind the stack that he was retrieving from. And so he went in between the two stacks to examine the leaning stack and to see how, if it's radius, how it was leaning, I guess, and determined that it was leaning in a way that was okay as long as he didn't bump into it. In this case, we don't think this is a difficult issue. We think that this is an issue that should be decided by a jury. We think that Mr. Dunn did what many other people would have done in the same circumstances. He saw a potential hazard but determined that it was only hazard if he took further actions. And so he avoided taking those actions. And we think that whether or not he's liable in and of his own right should be something that should be left to a jury. A few more points that I have. In regards to the burden, we don't think it's too onerous of a burden. Menard already checks these warehouses on a regular basis. Kyle Krause, the manager, had checked on several occasions that day, three times that day, in fact. So what actually we think happened here is either Kyle Krause checked the warehouse and he saw the danger and left it alone, or Kyle Krause checked the warehouse and the leaning stack wasn't dangerous but some mover came and moved this 20-foot-tall heavy stack of insulation somehow, or the third scenario, which is we think the most likely, Kyle Krause checked the stack and saw the same thing that Larry Dunn saw, that it wasn't dangerous as long as somebody didn't touch the stack. And the warning signs, which the defendants make a lot of noise about in the briefs, the warning signs say don't pull or don't climb on. And Larry Dunn didn't pull and didn't climb on this leaning stack. So we think that Kyle Krause saw the leaning stack and assumed that no one was going to climb on it or pull on it because the warning signs say not to, and he left it alone, just like Mr. Dunn did. The sign also gives you the opportunity to call for assistance too, right? It does, but they're also at opposite ends of the warehouse. Mr. Dunn testified that neither him nor his son saw the warning signs. They're just posted in two places at opposite ends of a very large warehouse. I see that my time is up. Thank you, Your Honors. Thank you, Mr. Starr. Thank you, Mr. Johnson. The case is taken under advisement.